J-S37035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| R.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.L.F. | : | No. 1506 EDA 2024 |

Appeal from the Order Entered May 14, 2024
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 0C1806435

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 9, 2025**

R.A. ("Father") appeals from the custody order requiring him to undergo Soberlink alcohol testing for a period of six months. We affirm.

We glean the following background from the certified record. Father and A.L.F. ("Mother") are the parents of S.R.A., a minor born in 2016. On January 27, 2021, Father and Mother entered into an agreement providing that they share legal custody of S.R.A. and giving Mother primary physical custody. After operating under that arrangement for several years, in December of 2023, Mother filed separate petitions for special relief and to modify physical custody, wherein she accused Father of excessively consuming alcohol during his custodial visits. The trial court granted the petition for special relief following a hearing on February 29, 2024, at which Mother testified as to the observations supporting her belief that Father was drinking. Accordingly, the court ordered Father to submit to a hair follicle drug

and alcohol test, the results of which it received approximately three weeks later. Those results demonstrated that Father was positive for alcohol as of the time of testing and that his pertinent level of ethyl glucuronide was thirty-six, although it did not provide any information as to the meaning of that result.

The parties, represented by counsel, reconvened for a hearing on May 14, 2024, to address the custody modification petition. At the outset, the trial court noted that Mother and Father had reached an agreement with respect to physical custody, but differed as to whether Father should be subject to Soberlink alcohol monitoring[1] or how it should be used. *See* N.T. Hearing, 5/14/24, at 3. During the proceeding, Mother's counsel provided the court with a two-page document that contained a chart generally interpreting hair follicle test result ranges ("Biopharma Institute Pamphlet"). *See*, N.T. Hearing, 7/5/24, at 7. The chart indicated that a level of thirty-six, like

_____

[1] Neither the parties nor the trial court explicitly articulated the details of Soberlink monitoring in the context of this case. However, in other matters, we have described as follows:

> Soberlink is an alcohol monitoring system used in several courts to monitor a person's sobriety at any time and in almost any location. A person blows into the device, and the device measures a person's blood alcohol concentration (BAC). The Soberlink device has facial-recognition technology to ensure the person blowing into the breathalyzer is the intended individual. Once Soberlink measures the person's BAC, results are electronically sent to designated recipients.

*Interest of N.B.*, 260 A.3d 236, 238 n.2 (Pa.Super. 2021) (non-precedential decision) (citation omitted).

Father's, "[s]trongly suggests chronic excessive alcohol consumption during the corresponding time period before specimen collection."  Biopharma Institute Pamphlet at 1.[2]  Notably, the court indicated on the record that the Biopharma Institute Pamphlet was "information as to that which [Father] apparently agreed to go with."  N.T. Hearing, 5/14/24, at 6.  Father did not lodge an objection at this juncture or seek to introduce expert testimony concerning the document, but rather stated, "okay" in response to the court's statement.

Following argument, the court entered an order modifying physical custody in accordance with the agreement of the parties and directing Father to undergo Soberlink monitoring for a period of six months, which may be terminated if all results are negative.  Father timely filed both a notice of appeal and a statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i).  The court thereafter authored a responsive opinion.

Father presents five issues for our review:

1.    Did the trial court abuse its discretion in ordering Father to submit to Soberlink monitoring for six months based on acceptance of the contents of a for-profit company's two-page pamphlet involving the testing of hair for alcohol in Strasbourg, France?

2.    Did the trial court abuse its discretion in imposing custodial restrictions on Father relying [*sic*] based on the contents of a two-page non-scientific pamphlet without expert testimony?

_____

[2] The pamphlet is contained within the certified record as an attachment to the notes of testimony from the May 14, 2024 hearing.

3.      Did Father waive his objection to the trial court's use of the two-page [Biopharma Institute Pamphlet]?

4.      Did the trial court error [*sic*] by determining that Father: (1) "generally has a history of alcohol abuse"; and (2) that "Father abuses alcohol during his custodial periods[?]"

5.      Did the trial court error [*sic*] by failing to address the custodial factors under 23 Pa.C.S. § 5328(a)[?]

Father's brief at 2-3 (cleaned up).

We address Father's first three issues together, beginning with the question of whether he properly preserved his challenges to the court's consideration of the Biopharma Institute Pamphlet.[3]  "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary."  ***Trigg v. Children's Hospital of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

We note that "[i]n order to preserve a claim on appeal, a party must lodge a timely objection."  ***Amato v. Bell and Gossett***, 116 A.3d 607, 625

_____

[3] Despite not being discussed by any of the parties, we initially conclude that the issues asserted in this appeal are not subject to the mootness doctrine. ***See M.B.S. v. W.E.***, 232 A.3d 922, 927 (Pa.Super. 2020) ("We may address mootness *sua sponte*, as we generally cannot decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given." (cleaned up)).  Although the court directed Father to undergo Soberlink testing for a period of only six months, and this requirement has potentially since terminated during this appeal's pendency, Father's challenge nonetheless satisfies an exception to the mootness doctrine because it is "capable of repetition and apt to elude appellate review."  ***E.B. v. D.B.***, 209 A.3d 451, 461 (Pa.Super. 2019) (citation omitted).  This is particularly true because the order in question directed that Father would possibly have to redo testing in the event of a negative result, and additionally because this issue could foreseeably arise again within these ongoing custody proceedings. ***See*** Order, 5/14/24; ***see also*** N.T. Hearing, 5/14/24, at 17 (the court directing Mother to "file an emergency [petition]" in the event Father fails a test).

(Pa.Super. 2015) (citations omitted). Additionally, "[f]ailure to raise such objection results in waiver of the underlying issue on appeal." *Id*. (citation omitted). In the same vein, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). As this Court has recounted:

> By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. This jurisprudential mandate is also grounded upon the principle that a trial court, like an administrative agency, must be given the opportunity to correct its errors as early as possible. Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. Finally, concepts of fairness and expense to the parties are implicated as well.

*In re F.C. III*, 2 A.3d 1201, 1212 (Pa.Super. 2010) (cleaned up).

In his brief, Father points to several portions of the transcript from the May 14, 2024, hearing that he claims preserve his objection to the trial court's reliance on the Biopharma Institute Pamphlet. He notes that his counsel contended at the hearing, to the extent the court assumed a test result of thirty-six had any meaning, "that there is a serious problem." Father's brief at 33 (citing N.T. Hearing, 5/14/24, at 8). Father further maintains that, throughout the proceeding, he argued as to the need of expert testimony. *Id*. at 34. He also highlights an instance where counsel declared as follows to the court, after the court rendered its decision to order Soberlink testing: "I'm not agreeing that those studies are correct. I'm not agreeing that the [thirty-six] represents excessive drinking or I'm not -- I'm not agreeing to what

- 5 -

[thirty-six] means. I don't know what [thirty-six] actually does mean." *Id*. at 35 (citing N.T. Hearing, 5/14/24, at 17). Based on this, Father contends that he safeguarded his claims that the court improperly relied upon the Biopharma Institute Pamphlet, either as inadmissible hearsay or as requiring expert testimony.

To the contrary, the trial court determined in its Rule 1925(a) opinion that Father had not preserved either of his evidentiary challenges. It explained:

> Father's attorney did not object to the Biopharma Institute [Pamphlet] research describing the hair follicle test results. Father's attorney did not object to the test result [itself], which returned with a score of [thirty-six]; a result that was extremely concerning to th[e c]ourt in light of the Biopharma Institute [Pamphlet] result indication. Further, Father's attorney did not respond nor object to th[e c]ourt's statement . . . regarding acceptance of the Biopharma Institute [Pamphlet] research, and instead proceeded to discuss the possible ways Soberlink could be used. Father's attorney also failed to object to testimony regarding the laboratory representative [who] secured the results.

Trial Court Opinion, 7/2/24, at 7. The court additionally stated that "[i]nadmissible hearsay is not an issue in this matter where the record shows that Father's hair follicle test supports Mother's [prior] testimony regarding his alleged habitual excessive alcohol intake." *Id*. at 6.

For her part, Mother likewise argues that Father did not object on the record to the pamphlet. She avers that Father instead improperly points to portions of the record wherein counsel disagreed with the interpretation of the pamphlet, which is different than a bona fide objection to the court's

consideration of that document. *See* Mother's brief at 22-23. Mother also notes that Father never requested from the trial court the opportunity to present expert testimony. *Id*. at 23. Like the court, she further points to several instances in the record demonstrating Father's agreement to proceed with the document. *Id*. at 21-22.

Upon review, we conclude that Father did not preserve his first two related claims on appeal, namely that the court erred in considering the Biopharma Institute Pamphlet. We agree with Mother and the trial court that on two separate occasions at the beginning of the hearing, Father indicated either affirmatively or by lack of objection that he and Mother were premising their arguments on the court's interpretation of the pamphlet. *See* N.T. Hearing, 5/14/24, at 3 (Father's counsel confirming to the trial court that "the parties have reached **a complete agreement but for whether or not and how to use** [**Soberlink**]" (emphasis added)); *id*. at 8 (stating "okay" when the court indicated that the pamphlet constituted "information as to that which [Father] apparently agreed with"). Our review of the notes of testimony similarly confirms that there was no objection to the Biopharma Institute Pamphlet on the basis of being inadmissible hearsay evidence.

Father did contend during the hearing that expert testimony might have clarified what a value of thirty-six represented with respect to the hair follicle test. However, he did not lodge a specific objection for Mother's failure to present an expert. Nor did he move the court to preclude either the test results themselves or the Biopharma Institute Pamphlet for that reason.

Instead, Father's counsel devoted his argument at the hearing to explaining that the test results could in fact be consistent with Father's previous testimony that he drank more heavily when he was not exercising custody of S.R.A., but that he scaled it back otherwise. We agree with Mother that while this may advance a position for the court to contemplate before rendering its decision, this is not akin to a contemporaneous objection. Father therefore is not entitled to relief concerning the court's consideration of the Biopharma Institute Pamphlet. *See Amato*, 116 A.3d at 625.

In his fourth claim on appeal, Father argues that the court erred in concluding that he abuses alcohol generally and during his custodial visits with S.R.A. *See* Father's brief at 36-42. In so doing, he specifically attacks the trial court's decision to find credible Mother's factual testimony from the February 29, 2024, hearing. Namely, Father contends that the court failed to provide any analysis or citation to the record to support its findings. *Id*. at 37. He also summarizes within his brief the conflicting accounts from Mother and Father at that hearing concerning his drinking, averring that he provided reasonable explanations on the stand for why Mother was mistaken in her belief that he habitually imbibes. *Id*. at 38.

This claim fails because, by his argument, Father is merely requesting that we reassess the court's credibility determinations. However, our law does not permit us to do so when there is ample evidence of record supporting the court's findings. Indeed, we have stated:

> [W]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

**M.J.M. v. M.L.G.**, 63 A.3d 331, 337 (Pa.Super. 2013) (citation omitted). It was the trial court's prerogative to accept Mother's attestation at the February 29, 2024 hearing that she observed signs of Father's intoxication at custody exchanges. No relief is due.

Finally, Father contends that the trial court erred by failing to consider the required 23 Pa.C.S. § 5328(a) factors before entering a custody order. **See** Father's brief at 42-47. We readily dispose of this argument on the basis that the custody portion of the order in question was reached via stipulation. **See** N.T. Hearing, 5/14/24, at 3 (Father's counsel confirming to the trial court that "the parties have reached a complete agreement but for whether or not and how to use [Soberlink]"). Father may not now attack that part of the order on appeal. **See Prensky v. Talaat**, 291 A.3d 25, 29 (Pa.Super. 2023) (stating that a "party who acquiesced to [an] order or judgment may not later be heard to challenge it" (citation omitted)); **see also M.S. v. J.K.**, 262 A.3d 510, 2021 WL 3629972 at *10 (Pa.Super. 2021) (non-precedential decision) (rejecting the appellant's challenge to the court's consideration of the § 5328 factors when he agreed to the custody arrangement that was ordered).

For the reasons above, we hereby affirm the trial court's order.

Order affirmed.

Judge Murray joins this Memorandum.

- 9 -

Judge Sullivan files a Concurring & Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/9/2025